IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ANTWON G. WHITTEN, | ) | |
| Plaintiff, | ) | Civil Action No. 7:16cv00195 |
| | ) | |
| v. | ) | |
| | ) | |
| HAROLD CLARKE, *et al.*, | ) | By: Elizabeth K. Dillon |
| Defendants. | ) | United States District Judge |

**MEMORANDUM OPINION**

Antwon G. Whitten, a Virginia inmate proceeding *pro se*, filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendants used excessive force against him, failed to protect him, denied his grievances and appeals concerning the excessive force incident, and failed to adequately investigate the incident. Defendants filed a motion for summary judgment, and Whitten responded, making this matter ripe for disposition.[1] Having considered the record, the court will grant in part and deny in part defendants' motion.

I. BACKGROUND

**A. Whitten's Allegations**

On October 31, 2015, Whitten and his cellmate (Brown) engaged in a physical altercation. Whitten admits that he used a weapon during the fight, but states that he only "struck" Brown with the weapon once and then set it down to fight with Brown. Whitten alleges that defendant Officer Lawson "stood at the cell door [during] the entire fight and maced [them] through the . . . food [tray] slot that [Officer Lawson] opened." Officer Lawson called for assistance on his radio, and defendant Officers Cooke and Gunter responded to the request.

---

[1] Whitten filed a "Declaration in Opposition of Defendants' Motion for Summary Judgment" (Dkt. No. 56), wherein he asks the court to grant him summary judgment and argues that "the records show a genuine dispute of material fact." To the extent he intends this to be a motion for summary judgment, it is denied because there are genuine disputes of material fact with regard to some claims because his allegations fail to state a claim with regard to other claims, as discussed herein.

After Officers Cooke and Gunter arrived, the cell door was opened. When it opened, Brown was holding one of Whitten's hands with both of Brown's hands and biting two of Whitten's fingers on the other hand. Someone other than Officer Gunter pulled Brown from the cell, and Officer Gunter ordered Whitten to get on his stomach and stay on the ground. Whitten alleges that he turned over to his stomach and complied with Officer Gunter's orders and "the next thing [he] kn[e]w, [Officer Gunter] allowed his K-9 to bite [Whitten seven] different times from [his] head to [his] underarm and back without any reason." Whitten was "yelling and screaming" for Officer Gunter to pull his dog off and "begg[ing] for mercy," while he suffered "extreme" pain. Officer Gunter "seemed to be enjoying himself along with" Officers Cooke and Lawson. Officers Cooke and Lawson "stood at the door and just watched the unprovoked mauling." Whitten alleges that Officers Cooke and Lawson could have "communicate[d] with [Officer] Gunter verbally at any point" to get Gunter to stop the "mauling," but they did not. Whitten further alleges that they all could have handcuffed him immediately when Brown was pulled from the cell, but they did not. As a result of the "brutal and malicious" "attack," Whitten had to go to the emergency room and suffered wounds on his head, back, and underarm that required somewhere between 58 and 90 sutures. Whitten argues that Officer Gunter used excessive force against Whitten "by guiding his K-9 to bite [Whitten] on the back of [his] head, back, and under [his] left armpit in an unprovoked incident."[2] Whitten further argues that Officers Cooke and Lawson violated his constitutional rights by failing to intervene to stop the "illegal" conduct of

---

[2] Whitten also summarily argues that Officer Gunter's actions were "racially motivated"; however, he provides no details in support of this allegation. To establish an equal protection violation, a plaintiff must first demonstrate that he or she has been "treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination;" once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny. *See Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Conclusory allegations of discrimination are insufficient to state a claim. *Spaulding v. Dixon, et al.*, No. 90-7315, 1990 U.S. App. LEXIS 15560, *2, 1990 WL 126136, at *1 (4th Cir. 1990); *Chapman v. Reynolds*, 378 F. Supp. 1137, 1139 (W.D. Va. 1974). The court finds that Whitten's conclusory allegation of an equal protection violation is insufficient to state a cognizable § 1983 claim.

Officer Gunter. (Am. Compl. 4-5, 9-11, Dkt. No. 31; Decl. Opp'n to Mot. Summ. J. 7-8, Dkt. No. 58.)

Whitten notified Warden L. Fleming and defendant Major Anderson of the incident, but they "were only concerned with taking lots of pictures on their cell phones and talking about the job their K-9 did on [Whitten]." Whitten argues that Major Anderson failed to properly investigate and discipline Gunter for the "illegal attack" on Whitten. (*Id.* at 5, 11.)

Whitten also states that defendant K.M. Fleming, an institutional investigator, was only concerned with the fight between Whitten and Brown and "totally ignored" and took no action concerning the "illegal mauling." Whitten argues that Fleming violated Whitten's rights by failing to properly investigate. (*Id.* at 12, 13.)

Whitten alleges that defendant Virginia Department of Corrections (VDOC) Director Clarke became aware of the incident after a "serious incident report" (SIR) was filed. Whitten states that Director Clarke is responsible for reviewing all SIRs after an investigation has been completed. Whitten claims that in reviewing the SIR of this incident, Director Clarke failed to "acknowledge" security video footage of the incident and, thus, "approve[d] of such illegal practices or enforce[d] this illegal policy of misconduct." (*Id.* at 11.)

Whitten also alleges that defendants Ravizee, the institutional ombudsman, and Elam, a regional ombudsman, violated his constitutional rights by "fail[ing] to acknowledge [Whitten's] allegations" and by "just concurr[ing] with the prison's grievance response without any investigation." (*Id.* at 13.)

**B. Defendants' Allegations**

Defendants paint a different picture. Officer Lawson states that on October 31, 2015, while he was making rounds, he heard an inmate repeatedly saying, "I'm going to get you." When Officer Lawson arrived at Whitten's cell door, he saw Whitten fighting with Brown inside

3

the cell. Officer Lawson made a radio call that there was a fight in progress, he dropped open the tray slot on the door, and he ordered Whitten and Brown to stop fighting. When they did not stop fighting, Officer Lawson administered a short burst of Oleoresin Capsicum (OC) spray[3] through the tray slot. Whitten and Brown continued to fight. (Lawson Aff. ¶¶ 4-6, Dkt. No. 50, Attach. 2.)

Officer Cooke arrived at the cell door and ordered Whitten and Brown to stop fighting. When they did not, Officer Cooke also administered a short burst of OC spray through the tray slot. Whitten and Brown continued to fight. (Cooke Aff. ¶ 4, Dkt. No. 50, Attach. 3.)

Officer Gunter arrived at the housing unit with his K-9, Bert. Officer Gunter saw Whitten "on top of his cellmate . . . making stabbing motions towards Brown's face." Officer Gunter states that Whitten "had a weapon in his hand, and the cell was covered in blood" and the "weapon appeared to be about four inches long and two inches wide, and it resembled a piece of glass." Officer Gunter "called via radio that there was a weapon involved in the cell." He then gave Whitten several orders to drop the weapon, but Whitten refused and continued to stab Brown. (Gunter Aff. ¶ 5, Dkt. No. 50, Attach. 1.)

After Whitten refused to comply with orders, Officer Gunter instructed the control booth to open the cell door. As the cell door opened, Officer Gunter "kept a safe distance from the fighting offenders and utilized canine Bert on Whitten, who was the aggressor." Initially, Bert engaged Whitten on the back of his head, but because this is a "possible vital area," Officer Gunter gave the command for Bert to release, and he did. Whitten continued to stab Brown and Officer Gunter ordered Bert to reengage. Bert grabbed on to Whitten's upper back. Whitten

---

[3] OC spray is a chemical agent similar to what is commonly known as pepper spray or mace and irritates a person's eyes, throat, and nose. *See, e.g., Park v. Shiflett*, 250 F.3d 843, 849 (4th Cir. 2001) (describing the physiological effects of OC spray).

dropped the weapon on the cell floor, and Officer Gunter kicked it away. Brown rolled away from Whitten to halfway under the bunk bed. (*Id.* at ¶ 6.)

Officer Gunter pulled Brown to a "safe distance" from Whitten while maintaining control of Bert, who was engaged on Whitten's back and buttocks. Officers Cooke and Collins restrained Brown and then took him to the medical department for evaluation and treatment for the "substantial wounds to his face." Officer Gunter ordered Whitten to remain still, and when Whitten complied, Officer Gunter commanded Bert to release Whitten. Officers Lawson and Middleton restrained Whitten and took him to the medical department for evaluation and treatment. Both Whitten and Brown were transported to a local hospital for medical treatment. (*Id.* at ¶¶ 7-8.)

## II. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most

favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine issue of fact for trial. *Id.* at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *see Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) ("Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."). However, summary judgment is not appropriate where the ultimate factual conclusions to be drawn are in dispute. *Overstreet v. Ky. Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir. 1991). In adjudicating a motion for summary judgment, a court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Instead, a court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). A plaintiff cannot use a response to a motion for summary judgment to amend or correct a complaint challenged by the motion for summary judgment. *Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009).

**B. Excessive Force**

Whitten alleges that Officer Gunter allowed his K-9 to bite Whitten repeatedly without any reason. Defendants assert that Officer Gunter was acting "in a good faith effort to maintain

6

or restore discipline."  The court finds that genuine disputes of material facts preclude summary judgment and, therefore, will deny defendants' motion as to this claim.

The Eighth Amendment prohibits prison officials from inflicting unnecessary and wanton pain and suffering on prisoners.  *Whitley v. Albers*, 475 U.S. 312, 320 (1986).  To resolve a claim that prison staff's excessive force violated the Eighth Amendment, the court must determine whether the force applied was "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  *Id.* at 320–21.  Whether the force was necessary or intentionally aimed at inflicting unnecessary physical harm depends on factors such as the need for the application of force, the relationship between the need and the amount of force used, the extent of injury inflicted, the extent of the threat to the safety of staff and inmates reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response.  *Id.* at 321; *see, e.g., Wilkins v. Gaddy*, 559 U.S. 34 (2010).

Whitten alleges that he was separated from his cellmate Brown, compliant with Officer Gunter's orders, and laying on his stomach when Officer Gunter allowed his K-9 to bite Whitten repeatedly while Whitten was screaming, yelling, and begging for mercy.  Whitten states that at no time was force necessary; that Officer Gunter acted intentionally, maliciously, and sadistically; and that Officer Gunter "seemed to be enjoying himself" while the K-9 was biting Whitten.  Officer Gunter avers that he saw Whitten on top of his cellmate, making stabbing motions towards Brown's face; Whitten disobeyed orders to drop his weapon; and that he engaged a K-9 on Whitten until Whitten dropped the weapon.  Officer Gunter argues that he was compelled to use force to halt the ongoing "and life-threatening" altercation.  Based on the record before the court and drawing all reasonable inferences in the light most favorable to Whitten, the court concludes that there are genuine disputes of material fact precluding summary

7

judgment on this claim. Accordingly, the court will deny defendants' motion for summary judgment as to this claim.

**C. Bystander Liability**

Whitten alleges that Officers Cooke and Lawson stood at the cell door, "just watched the unprovoked mauling," and did not stop it. Whitten further alleges that Officers Cooke and Lawson could have stopped the excessive force "at any point" by verbally communicating with Officer Gunter and could have prevented it to begin with if they had handcuffed Whitten immediately when Brown was pulled from the cell. Defendants assert that because there was no excessive force, there is no bystander liability and that they are not K-9 handlers and, thus, could not have controlled the K-9. The court finds that genuine disputes of material fact preclude summary judgment and, therefore, will deny defendants' motion as to this claim.

Under a theory of bystander liability, an officer may be liable if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th Cir. 2002). The court has already determined that there are genuine issues of material fact as to whether excessive force was used and also concludes that there are genuine issues of material fact as to whether Officers Cooke and Lawson had a reasonable opportunity to prevent the harm. Accordingly, the court will deny defendants' motion for summary judgment as to this claim.

**D. Grievances, Appeals, and Investigations**

Whitten alleges that defendants Clarke, Anderson, Fleming, Ravizee, and Elam failed to respond appropriately after the excessive force incident when they denied his grievances and/or appeals and/or failed to investigate the incident. The court finds that Whitten's allegations do

not demonstrate a violation of a constitutional right and, therefore, will grant summary judgment to these defendants.

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the constitution of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42 (1988). "Ruling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation," *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007), and inmates do not have a constitutionally protected right to access the grievance procedure, *see, e.g.*, *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Accordingly, the defendants are not liable under § 1983 for their responses to the grievances or appeals. *See Brown v. Va. Dep't Corr.*, No. 6:07cv33, 2015 U.S. Dist. LEXIS 12227, at *8, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009); *see also Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (holding allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the alleged underlying deprivation). Further, Whitten's claims that the defendants failed to investigate his grievances or appeals also are not cognizable under § 1983. *See Charles v. Nance*, 186 F. App'x 494, 495 (5th Cir. 2006) (holding that alleged failure to investigate a grievance "fails to assert a due process violation"); *Sweat v. Rennick*, No. 9:11-2908, 2012 U.S. Dist. LEXIS 55200, at *5, 2012 WL 1358721, at *2 (D.S.C. Feb. 7, 2012) ("Plaintiff's complaint that this Defendant has not properly investigated his claims . . . fails to set forth a claim for a violation of a constitutional right."); *Lewis v. Williams*, Nos. 05-13, 05-51, 05-52, 2006 U.S. Dist. LEXIS 8444, at *18-19, 2006 WL 538546, at *7 (D. Del. Mar. 6, 2006) ("[T]he failure to investigate a grievance does not raise a constitutional issue."). Accordingly, the court will grant defendants' motion for summary

judgment as to Whitten's claims against defendants Clarke, Anderson, Fleming, Ravizee, and Elam.[4]

**E. Official Capacity Claims–Damages**

To the extent Whitten brings this action against the defendants in their official capacity for monetary damages, such relief is not available via § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Therefore, the court will grant defendants' motion for summary judgment as to Whitten's claims for monetary damages against defendants in their official capacities.

III. CONCLUSION

For the reasons stated herein, defendants' motion for summary judgment is granted in part and denied in part.

An appropriate order will be entered.

Entered: September 11, 2017.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

---

[4] To the extent Whitten is attempting to hold any of these defendants liable in a supervisory capacity, his allegations fail to state a claim. In order to set forth a claim for supervisory liability under § 1983, a plaintiff must show:
> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw*, 13 F.3d at 799.

Whitten has failed to allege facts that would establish the *Shaw* elements against any of the defendants. Moreover, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983). Accordingly, the court concludes that Whitten has failed to state a supervisory liability claim.